Walmart Stores East INC  Thanks and good morning. We're ready to call our first case. Zanetich v. Walmart Stores. I hope I'm saying the plaintiff's name correctly. Counsel? Good morning, Your Honors. I'd like to save two minutes for rebuttal. Okay. Done. May it please the court. On February 20th. Before you start, why don't you give me your name and help me again with your clients? Oh, yes. Yes, Your Honors. My name is Justin Swidler. I represent the plaintiff, Mr. Zanetich. Zanetich? Zanetich. Yes. Okay. Thank you. May it please the court. In February of 2021, New Jersey passed a monumental bill legalizing cannabis in the state of New Jersey. Among its protections is an employment provision that states no employer shall refuse to hire or employ any person who shall discharge from employment or take any adverse action against any employee for failing a drug test. Yep. We're on it. We read it all. So it seems like this comes down to a question or perhaps it comes down to a question about just how elaborate this statutory scheme is. Is the acronym here, do they say CREMA? CREMA. Yes, Your Honor. Okay. So is, was CREMA meant to, you know, your opponents say CREMA was meant to set up a specific statutory framework for handling issues associated with legalized cannabis and that a private right of action is not part of that framework. So obviously you see it differently, but why don't you help us walk through some of the, the legal analysis that they're putting forward on the other side, specifically their assertion that the commission is given very precise powers and in the face of your argument that, but it, but it doesn't have power over people. You know, Walmart doesn't buy and sell. They cite, and it looks like there is this commission issuing things supposedly to govern people who aren't in the business of buying and selling. You know what I'm asking about here? Yeah, well, Your Honor, the... What are we, what are we to make of the fact that CREMA is, is putting out guidance that's supposedly for all employers? Right. Well, Your Honor, the guidance is, I mean, we should start with, in NJV Gomez, which we cite to the court, page 44 of the New Jersey Supreme Court's decision, they explain that the CREMA reflects a clear legislative intent. It's intent to construe CREMA and its companion bills broadly and robustly as to achieve their remedial purposes. I get that. I understand that. I'm just asking, I'm trying, I asked maybe inartfully a question about a specific thing. You had argued it, hey, it can't really be what Walmart says because Walmart's not in the business of buying and selling, et cetera. CREMA doesn't have jurisdiction over it. And they say, look, that's not true. They've got very broad authorities. I mean, I don't know how often you'll have Walmart saying, hey, somebody's got authority over us, but that seems to be what they're saying here. And they cite this specific guidance that came out where CREMA says specifically it's to, quote, all employers, whether operating in the cannabis industry or otherwise. Right. So it looks like the commission thinks it does have that authority, just like Walmart says it's got that authority, and it's exercising that authority. What are we to make of that? Well, Your Honor, guidance is, of course, different than whether they have jurisdictional authority to command any control. The statute specifically says the jurisdiction, supervision, duties, functions, and powers of the commissions extend to any person who buys, sells, cultivates, produces, manufactures, transports, or delivers any cannabis or cannabis items, followed by a delineation of its powers. Its powers include the ability to investigate and aid in the prosecution. But it does not actually permit an actual prosecution. You would need a separate entity to prosecute. Okay. Well, and there are, I guess, prosecutorial authorities, if you thought there was going to be some kind of a criminal thing. I don't know. But what, target in for me, why doesn't the fact that CREMA is exercising its authority broadly, why isn't that relevant to the overall issue of whether this framework is as powerful as it is? Well, Your Honor, there's actually nothing in the statute. I mean, there's nothing in the statute. You know, considering that Walmart's argument is you need to look at the text of the statute, there is nothing in the statute that gives the CRC any authority over any individual except for the categories of individuals that I just stated on the record and I know the court is familiar with because it's stated in the statute. Issuing guidance is not the same as enforcing a statute. And even the guidance they issue, there'd be no way to enforce it per both the district court's understatement that the employment provisions, it's rendered meaningless. And Walmart's ultimate argument, there's nobody to go to because the Cannabis Regulatory Commission lacks authority over Walmart by the statute. Yeah, they say you forfeited that argument actually, right? Didn't they argue that you forfeited any assertion that the commission lacks jurisdiction over them? Well, Your Honor, it would be a strange thing to forfeit. This is part of the justification of the district court for ultimately its analysis, which we've always contended. I thought they said we waived our ability to amend, but putting that point aside for a second, there'd be no way. The district court's decision, which has to balance the three court factors, was based on its idea that the CRC has this authority, although it ultimately decides it doesn't by the end of its decision when it says that it's now rendered the provision meaningless and unenforceable. But nevertheless, the district court's decision begins with its guidance, which both misinterprets what a federal court does when interpreting a state statute, but also misinterprets its ability when it says that something along the lines of the New Jersey Supreme Court is less likely to find an implied right of action when the entity the person is suing is subject to pervasive state agency regulation. And here, the entity is not subject to that regulation. We're attacking the district court's rationale under court. Clearly, we've always alleged there's a private right of action under the statute. Can I pick up on this notion that there's a private right of action under the statute? I mean, we know this much. There's no express right of action. So we're taking that off the table. And so now, really, your entire case, as I see it, we've got some jurisdictional issues, but clearing those, or maybe we'll get to those, depends on whether there's an implied right of action. And then we've got our court v. Ash, three factors. I just, you know, I'm kind of curious about the first one. The first one says whether the plaintiff is one of the class whose especial benefit the statute was enacted. And so it strikes me that for there to be a private right of action, that's for this sort of class, that class, we have to define that class. And it strikes me that the only way that we can really define that class is a person who was denied employment based on cannabis use. That's probably a definition of a class that we'd want to see that. And then when it says when the statute was enacted, we need to look at probably not just an individual provision or a line-by-line thing, but its enactment. So we're looking at the overall legislation. And so, you know, I guess my thought is, A, do you kind of agree with that method of doing prong one? And, B, if you do, where do we have in the enactment of the statute? You can tell me it's in the enactment of the constitutional provision, too. Maybe. I don't think so. But a desire to especially protect persons who have been denied employment based on cannabis use. In the enactment of the statute, showing us that, yes, this was part of the ones that were the especial. I want to say special, but I think it says especial. Yes, Your Honor. I mean, I do agree with the sort of the logical roadmap you provided. Absolutely. The statute's language is clear. This provision specifically prohibits certain employment actions. And it's, you know, I believe it to be self-evident from the language. And we did cite the court to some legislative history, but it's mostly just repeating the very text of the statute. It prohibits specific conduct to the benefit of the employees or prospective employees, which it's prohibiting. And so it, you know, right screen language. But I mean, the problem I have with that is if we're going to look at the express language of a statute, we also it tells us a lot that in the express language of the statute, they didn't create an express cause of action. And so at least for prong one, it seems that people who want an implied cause of action have the flexibility of saying, hey, your answer's not going to be so much in the express language of the statute. You've got an open field. You can look at more areas to begin to make a case that somebody wants to imply this, that the legislator wanted to imply this cause of action. And so if we say that the Texas statute might not be the greatest help, I mean, New Jersey did a nice thing. They codified their findings and declarations. But as I read that, I didn't see anything in there that said, and we find that employers are denying employment to a class of people who use cannabis. And so if they had that, then you might be able to check prong one, but I don't know that I see that in here. Am I missing something? Should I read this in a different way? No, I mean, CREMA provides rights both for housing benefits, health benefits, employment benefits, pretrial intervention benefits, criminal benefits. So it is a robust scheme, as our Supreme Court has found, to change the entire cannabis prohibition history of the state. That's the thing that I was asking about. It does appear to be a robust scheme. Is there some negative implication there that you have to address, Mr. Swidler? I mean, it is pretty robust. And in that robustness, we nowhere see, and there's a private right of action. Like, they seem to have thought this through, and they know how to create private rights of action. They do it in other employment statutes, but they haven't done it here. Well, Your Honor, as we point out, the New Jersey Appellate Division has found that in employment protection provisions, courts readily find implicit rights of actions. We cite the court to Winslow. That's Winslow. Right. But in Winslow, there were remedies in the statute, private remedies in the statute. In fact, I think in all the cases you cited where there was an implied right of action, there was at least explicit remedies in the statute. And there are no remedies in CREMA, are there? There's no employment remedies in CREMA. Okay. Well, doesn't that make Winslow very different? I mean, it seems to me that that's a distinction with a real difference. If they wanted there to be a private right of action, and they had somehow overlooked saying there's a private right of action, wouldn't they have at least have said, and here are the remedies associated with this? Well, Your Honor, not necessarily. I mean, we know that one of the three bills passed that day specifically disclaimed a private right of action. This statute does not have that language in it either. Also passed pursuant to the Constitution. It's true that they do know how to say don't do this, but is that your strongest argument? That, yeah, there's no explicit right and there's no explicit remedy, but they didn't say we couldn't do this? No, Your Honor. I think the strongest argument we have is that by the court's own statement. I mean, one, the CRC does not allow itself to enforce this provision. There's nothing in the statute to do so. So without a private right of action, the court has basically stricken this entire provision from the statute. And there's no statutory construction in the state of New Jersey that's resulted in a superfluous entire section of the statute. No one's claiming the statute's unconstitutional. It's not being deleted because the state overstepped its authority in passing this provision. It is literally an interpretation that the idea is the legislative intent was to create a provision of the statute that is utterly meaningless. Well, you know, I mean, the problem with that strikes me is, you know, the Supreme Court's decision in Gonzaga v. Doe that basically said you've got FERPA, you know, the protection of student transcripts. And then it said no right of action for that, if I remember Gonzaga v. Doe right. And so it seems like you're kind of in the it seems like you're kind of fitting the Gonzaga v. Doe paradigm. We create these protections, the FERPA protections, and then there's no private right of action. We hope that that would somehow, you know, just people would follow it. Are you different than Gonzaga v. Doe? Is there something more extreme than this case in Gonzaga v. Doe? Because it seems like a template that this maps onto. No, you know, we think we are. Again, this being an employment statute in particular with rights creating language where the court ultimately even holds that this decision has rendered an entire provision of the statute meaningless and illusory does put us in a different position. I do want to touch upon our common law, if I could. Just on the statutory point, does the New Jersey Attorney General's office have the authority to civilly enforce the statute? This provision of the statute? This provision of the statute. There's nothing in the statute to indicate it does. Is that necessary that the statute itself say? I mean, the statute mentions that the commission can aid in the prosecution of a violation. So it's contemplating some sort of a prosecution. I recognize that there are, you know, non-employment provisions. But why wouldn't the AG be able to step in to prosecute employment violations? There's no criminal provision that would necessarily permit. I mean, are you suggesting like an injunctive relief? Well, yeah, you could say prosecution doesn't necessarily imply criminal. It tends to imply criminal, but you could prosecute a civil fine action or something like that. Well, it certainly hasn't been attempted yet is all I can say. And so I don't think there's a court case that would hold where the AG has that authority. I would, you know, I did want to save time for rebuttal, but I was. No, listen, you're on our time. We've been asking you questions. And I do have a question about Pierce. Okay. You know, this is a Pierce claim that you're asserting. But in looking across the authorities, it certainly appears that Pierce is always about protecting people who are current employees. Right. I haven't seen any case that says somebody who's got an offer, a provisional offer, can invoke Pierce. I mean, do you acknowledge you're arguing for an expansion of that? Yes. And why would we say, yeah, go ahead and step out there when there's not a single New Jersey court that's ever said that? On the contrary, the opinion seems to be pretty clear that it is as a protection to existing employees. Well, there's two reasons, at least, that the court should extend a common law right in this instance. One is none of the other claims that are cited by the court that we could find have, as the public policy of the state, codified in the statute a refusal to hire as a basis of the public policy. So here, as the district court also acknowledges, refusal to hire is in the statute, which suggests that there is a distinct public policy at issue here. But secondly, there is a – we argue on the district court tonight, but we do argue that there is a distinction between an individual who has already been hired, subject to passing a drug test, versus somebody who's not yet been agreed to be hired. Because once you agree somebody to hire, you've created some type of contractual agreement. Well, was he hired, though? My understanding was he got a conditional offer and that the condition was not met and the offer was rescinded. Correct, Judge Freeman. Let me just be clear. Maybe I wasn't clear on what my argument here is. There was an agreement to hire this individual subject to him passing a drug test. So it's not an individual that they haven't made an agreement to. There was an agreement by Walmart to hire this individual subject to him passing a drug test. Just to make sure I understand this, what you're really saying is there's no such thing as a provisional offer. That is, this offer cannot be accepted unless and until this condition is met. Your position is a conditional offer is itself a contract. That's the legal position you're advancing. Yes, sir. A conditional offer is if you meet these requirements, you will be hired. Yes, that is our position. At a minimum, if I could say, it makes it different than other failure-to-hire cases where you're still in the application process. Even if that were true, the New Jersey cases say, and we said in Concinetti, Pierce is about wrongful discharges and it has only been applied where the discharge itself offended a clear public policy. That's how we've understood it to be. That's our law about what it means, given that that's how we have understood it and there's no New Jersey case contrary to that. How could we adopt your position? Well, Your Honor, it would seem certainly against some... It doesn't seem consistent to hold that the provision of CREMA that states you cannot fire somebody or discipline somebody or subject somebody to an adverse employment action by failing a drug test is somehow protected by the common law, but the first clause is not. It's completely plausible because they're employees. That's the whole point. And Mr. Zanopik is not and never was an employee of Walmart. But the public policy of the state as codified also restricts a corporation's ability to not hire somebody and ultimately the Pierce claim is that a defendant acted in breach of public policy to the harm of the plaintiff. And this is a unique circumstance because of the statute, which does bring me, if I could, to our request here that we certify this question to the New Jersey Supreme Court. We understand. We know what your argument is there. Sure. We have it in the briefing. Let me ask my colleagues if they've got anything. Okay. We'll have you back on rebuttal, Mr. Swiller. Thank you so much, Your Honors. Thank you, Your Honors. Thank you, Your Honor. Misha Zaitlin for Walmart. Plaintiff asked this court to – Zaitlin? Is that how you say it? Zaitlin. Zaitlin. Okay. Plaintiff asked this court to expand New Jersey law in two respects that the New Jersey legislature and New Jersey Supreme Court have not seen fit to do. First, he asked this court to create an implied cause of action that the legislature didn't create. Second, he asked this court to create a common law cause of action for failure to hire that the New Jersey Supreme Court has not created. Now, I'd like to start with the – Well, let's start with the remedy issue. And what seems to me their strongest argument, which is the statute says what it says. And it says you're not supposed to do exactly what Walmart did. I mean, that seems like it's undisputed. There's not – it doesn't seem to be any fact question here. Walmart made him an offer conditioned on his passing a drug test. He didn't fail the drug test with any other kind of drug. He failed it for testing positive for cannabis. And CREMA says specifically you're not – you are forbidden to refuse to hire somebody based on a drug test for cannabis. So that seems like the facts are there. And the district court said, and I quote, the decision, the court's decision, leaves plaintiff without a remedy and essentially renders the language of the employment provision meaningless, unquote. Clearly, the district court was uncomfortable with that result. Why shouldn't we be very uncomfortable with that result as well? Your Honor, first, this is at the motion dismiss stage. They allege that we violated the statute. That's true. And we're taking every allegation as true, so we're taking it as true. And so we respectfully disagree with the district court that this renders this provision nuggatory. We think that the very broad powers that the commission has under the plain statutory text would allow the commission at minimum to issue regulations to impose civil penalties in this sort of circumstance. I think the statute is unambiguous in that respect. Oh, you know, that is a very, that's an interesting argument. Not to be cynical, but something tells me that if they issued a regulation and tried to impose fines on Walmart, we would have somebody skilled like you in here on behalf of Walmart saying, they've got no authority to do that. Where in Cremon do they have the authority since we don't buy, we don't sell, we don't market, we don't ship, we don't do any of the things associated with cannabis? They can't do that to us. Are you stepping out there and saying Walmart submits itself to the commission? Well, certainly whatever arguments we would make against those regulations would not be based on the authority of the commission to issue regulations. Under the plain statutory text, the commission has the authority to adopt regulations as necessary to carry out the intent and provisions of the SEC, which includes subsection 52. If there were other challenges to those hypothetical regulations, they certainly wouldn't be on the authority of the commission to. So I heard you correctly, that you believe that the commission can issue regulations under subsection 52, or section 52 governing any employer? No, can issue to enforce the specific provisions. Yes, they could. They could issue regulations that dealt with employers who violated subsection 52. That's correct. If they wanted to, the commission could fine you right now for refusing to hire Mr. Zanatek. And you would say, you got us. We're subject to your authority. The civil penalty provision that is provided for the commission presupposes a regulation that was issued first. So if they issued regulations and we violated subsection 52, then assuming those regulations were otherwise valid and wouldn't be arguing that they don't have authority to issue those regulations, then the company that did in fact violate those regulations would be subject to. That's where the rabbit goes back in the hat, assuming they were otherwise valid. But let's assume for the sake of discussion that we were wondering what, other than the commission directly issuing regulations and trying to enforce it against Walmart, are there other things in the statute that would save this from being nugatory? There are four provisions that we point to. One that says the commission shall have the power to investigate and aid in the prosecution of every violation. So, you know, whether there is another authority to prosecute that's, over to Judge Freeman's question, we don't know that there's anyone other than the commission that would have the authority and so would have to push past those regulations, but at least they could investigate. And that is not nugatory. Second, they have the regulations authority that we've discussed. Third, they have all powers necessarily convenient and necessary to carry out the act. You know, obviously that would have to be spelled out in New Jersey case law, the full scope of that. And then they have all powers and necessary proper to enable it to carry out the commission's duties, functions, and powers. So those are four very broad provisions. And, in fact, as I hear my friends write my friend's argument in the brief, they really only contest the fourth one, which is found in subsection A of section 34. They don't really contest that the commission could issue regulations. It strikes me, though, that embedded in your argument is the fact that we would have to make construction of those four statutory sections. And we'd have to make a construction that would say, yes, the commission can take action somehow, maybe through regulations first, but somehow, maybe through just orders, pre-regulation, even though that's not exactly normal. But we have to give some construction to that. Because if we were to construe that, each one of those, and say we're reading it, and actually the commission can't do anything here. It's just beyond what it can do because Walmart doesn't sell or purchase or distribute cannabis. Then their argument has traction. But so I guess what I'm saying is it strikes me that for your point to look at these other sections to have value, we have to give real specific construction to them to say, aha, yes, the commission can go after Walmart for exactly this. And if we can't connect all of those dots, then this provision does seem to be just totally nugatory. So you want us here to connect all of those dots, right? I mean, this court doesn't have to give an authoritative construction of all four. I think your honors would have to reject or at least conclude that the New Jersey Supreme Court would reject their premise that somehow the qualifying language in just sub A somehow guts the commission's authority throughout for all employers. And that just can't be right. I mean, if you look at subsection 52, even in subsection 52 itself, the commission has specific obligations with regard to employers. It has to certify the special texting experts that allow the employer to make sure that they don't have drugs during work. So it's the position of nugatoriness would is, I think, completely unsustainable. In fact, the text clearly contemplates the commission's involvement here. But taking a step back, you know, we've been focusing on one aspect of the court test. But I think the broader inquiry this court needs to do in order to decide this question is to determine whether New Jersey Supreme Court applying this court test would find that there was is like you take it right to one of their arguments. And the thing that Mr. Schindler wanted to wind up with, which is, hey, we shouldn't be dealing with this. We should send this to the New Jersey Supreme Court. We should certify this question. What's what's your response to that? I think that would only be a sensible request if your honors, after looking at all these arguments, really think that it's a tough, close call. And if you look at all of the New Jersey Supreme Court precedents they've cited, even the superior court precedents they've cited, they don't have a single case in the history of these courts that's recognized an implied cause of action or anything like this. The three cases that they most heavily rely upon, the Pepper case and the Lally case, they were from more than 40 years ago, before the New Jersey Supreme Court adopted the court factors. Don't mention anything like the court factors anywhere in those provisions. And in any event, those provisions have specific, like, for example, in Lally, the statute actually said that you get lost wages. So that's at least, if you were to actually apply the court factors, you could at least maybe get there. So your answer to Judge Jordan's question on why we shouldn't certify seemed to suggest that the only reason to certify would be just a close call, for stumped. Should it enter our consideration at all that this is a matter of public significance, New Jersey? They amended their constitution. They enacted the statute. It's a pretty wide-ranging statute. This is a pretty important part of probably those reforms because it says that no employer can refuse to hire based on cannabis use. Should it enter our calculus at all that maybe, you know, we should give them a shot at this before we take it ourselves? They initially filed there. You removed. Maybe we should put this back in the New Jersey courts due to its novelty and public significance? Your Honor, this court has articulated three factors to determining whether to certify. The public significance is part of the second factor. So I think that's a plus on their side. However, I think that the ultimate question is, is there a point to ask the New Jersey Supreme Court to decide this question, which we think respectfully is very clear under the court factors. The U.S. Supreme Court has famously been very reluctant to recognize unapplied private rights of action. The New Jersey Supreme Court itself has adopted the U.S. Supreme Court's approach, has itself said that we're been reluctant to recognize a cause of action. And, again, they don't point to any case that the New Jersey Supreme Court has recognized a right of action, anything analogous to this. So can I test you on one other thing, which maybe is the back door to certification, which is removal? In the amount of controversy here, you say that there's no punitive damages allowed. That's probably an overlapping issue. It's probably one of those jurisdictional issues that overlaps with merits issues. Those are permitted. It's a little awkward to have a jurisdictional issue that doubles as a merits issue and vice versa. So if we don't have punitive damages in play here and we're supposed to evaluate amount in controversy on the date that the notice of removal was filed, how exactly do we get – we've got back pay that comes out at like $22,000-ish. How do you make up the gap? Is this a front pay sort of just guesstimate? What do you think? Well, I do think that the Chabal case from this court is a full answer to that, what this court said. Chabal is a – that's totally different, right? That's Tucker Act. That's jurisdictional ceilings, waiving amount over a ceiling. This case is jurisdictional floor. So it's really weird to come and say, hey, the case about jurisdictional ceilings is the one that we want you to look at to interpret a jurisdictional floor. I mean, I think the inquiry is the same as what is the amount. Controversy could be waived over $10,000. There's not – I don't know that you can waive up to $75,000. I'm pretty sure you can't, right? I'm pretty sure we cannot or we wouldn't. But I think that the point that this court was making is when you're looking at what the amount in controversy is, you have to think about what the reasonable amount in dispute is, a lawsuit of the type my friends have brought. Surely it would run long enough. And under New Jersey law, the amount – Wait, wait, wait. Surely it would run long enough. Are you saying that the amount in controversy takes into account litigation costs? No, it takes into account the reasonable length – the reasonable amount of money that is in controversy. Right, the amount that's in controversy. So I thought you sort of made a front pay pitch. Yes. Like $40,000 and change. And then back pay amounts to maybe $20,000 and change. And so you're still short there, aren't you, unless punitives are in the mix? What this court said is the amount of controversy – and this is in the Angus case – the amount of controversy is not measured by the low end of the open-ended claim, but rather by a reasonable reading of the value of the rights being litigated. You give us some idea of where the top end of that range is then. You know, we weren't making up the numbers. We were trying to work off of things you gave us, right? And am I right that the front end pay, given the $19 and some cents per hour job that he was going to get, if you multiplied that out and you figured out, okay, we give you a year on that, that you're in a $40,000 range, correct? For a year, it would be $40,000, although we've had New Jersey cases that have awarded far more than a year. Well, far more than that. So is your argument that the front end here would have been a lot more than that because they would have given him more than a year? What's your argument that gets you up to $75,000 without punitives? I mean, our argument, we have two arguments, and you can do them separate or add them up. One, I think that under Chabal it is clear that the value of the claim is what reasonably could be expected. That's what we're asking you for. That's exactly what we're asking. No, no, no, reasonably expected just on the back pay. And when you have an open-ended claim like a back pay claim, and when you have New Jersey law saying the amount of back pay you get is at judgment, not at the time that you have filed your complaint, just looking at back pay itself, you're easily satisfied. But with regard to front pay, even if we're looking at just the front pay, you have one that courts in New Jersey have awarded front pay for many years, and even if you consider even the possibility that two years of front pay would be awarded, that would be enough by itself even without considering a penny of back pay to get you over $75,000. The other point we made in our letter of submission is he's also asking for reinstatement. The value of reinstatement, obviously, that could last multiple years. They're taking notes furiously about how much money this case is worth right now. I mean, obviously, they're asking for class so that, you know, we would obviously argue for a lesser amount, but as this Court has said, when you're talking about the amount of controversy requirement, you're looking at the high end rather than the low end. So when you say reinstatement, I understand from kind of employment what a person makes. If a person makes $20 an hour, the cost to the employer might be $30 an hour because they have to pay for benefits, they have to pay for all these other things. But we don't account for that. Are we supposed to account for that in the amount of controversy, or is it just a – or when you ask for reinstatement, do we say, hey, the real cost of employing a person isn't $20, but it's the benefits, the whatever else is part of this deal that we get, and that costs the employer something too. So the real cost is $30 or $35 an hour. Are we supposed to do that just because there's a reinstatement claim? Conceding that we don't have a specific case law on this, I think the fairest way to consider the value of reinstatement is the value of the fund pay. It would be because you're getting the job. And so the value to an individual of a job that's going to pay you $40,000 a year, and presumably you'd have the job for some period of years as well more than 75%. What about the duty to mitigate? Should we account for that at all? I mean, certainly – Because you're probably going to argue later that there's a duty to mitigate. He should have been looking for another job. He could have tried to get the exact same position at another employer. Walmart's a big employer. It's not the only employer, so he could have gotten a job elsewhere, and his damages shouldn't be anywhere close to that. So should we account for duty to mitigate now, or should we just say forget it? And that's something this court did discuss a little bit in Chabal, saying there wasn't any specifics about how much she would have made from another position. This court wasn't too troubled by that in light of the lack of evidence here. We have no party disputing that the 75 – No, we don't have any party disputing, but we've got an independent duty. That's what makes these amount of controversy and diversity jurisdictions and things a little bit challenging because you're in the curious position of saying, because you've got the burden of proof on removal, of saying, man, this thing is worth a lot of money, something that I'm sure you'll be saying the opposite of if you ever have to get to the merits. Especially in a class context. Yeah, you'll be talking this thing down. So I'm wondering like how seriously we need to take estimates from the party who wants to be in court, who can almost certainly be expected to say very dramatically different things once jurisdiction is fixed. But leaving that aside for a minute, is the Pierce claim enough to get it over the hump for them? It's a common law claim. Punitives are allowed there. Do we need to be – do you think it's permissible for us to look at that? You've said obviously that the Pierce claim is worthless in a legal sense. Does it have worth in a jurisdictional sense? My understanding is the remedies they're asking for under the Pierce claim are kind of the same as the remedy they're asking for under their implied right of action. The question on punitives in both cases would be whether they have alleged and ultimately approved a certain level of fault or see enter. But I will say just stepping a little bit back. What's the answer to my question? Are we allowed to take that into account? Yes, Your Honor. Determining the amount of controversy. So if we said they could get $350,000 in punitives on a Pierce claim if they were successful, they're clearly over the line. We don't have to worry about it anymore? Yes, absolutely right. We don't have to worry about it anymore. I will just briefly say that I understand the notion that I'll sometimes, oftentimes you're looking at a subject matter jurisdiction, you don't care what the parties say because you've got to establish your own. But the U.S. Supreme Court did say in DART is when you have the parties agreeing, there just has to be a plausible allegation that the amount of controversy is over. I think the issue here is that you have disagreed with your initial statement in the notice of removal because that relied on punitives to get us to $75,000. And then when we asked about it, you said no. So it sounds like you're seeking leave to amend your jurisdictional allegations in some sense. And so that's what we're working with here. It sounds like you yourself have acknowledged that on the papers there was no jurisdiction at the time of filing. Your Honor, we did calculate in our papers the amount of front pay. I don't think we said that that is the ceiling of what could be recovered on front pay. I think it's true to say that we have not done the kind of more fulsome analysis on the back pay issue, although I think it's quite clear now under this court's case law that the back pay would be sufficient to exceed the $75,000. Okay. Thank you very much, sir. We'll go ahead and hear rebuttal from Plaintiff's Counsel, Appellate's Counsel. Yes, Your Honors. The defendant has argued, specifically with respect to Pierce as we get back to the common law, that there's nothing in Pierce or the New Jersey Supreme Court's pronunciations of its public policy that would support extending a public policy exception to Walmart's conduct. And I want to point the court specifically to Lally, which is 85NJ668, which states that they endorse the appellate division that there exists a common cause of action for civil redress for retaliatory firing that is specifically declared unlawful under the relevant statute. Isn't the operative word there firing? It is, except the next sentence. It is because that statute deals with retaliatory firing. But the next sentence, and also the facts of that case were firing. But it says the statutory declaration of the illegality of such a discharge underscores its wrongful and torches character for which redress should be available. Such a cause of action is strongly founded in public policy, which in themselves is reflected in the statutory prohibitions themselves. Sure. I don't think you'll get a question out of this panel or any other one about whether Pierce reaches retaliatory discharges that are against public policy. The whole question that's been put to you is can we expand it the way you've suggested. And I think you've acknowledged it is an expansion. And you don't have a case where it's been extended to somebody who isn't actually an employee. That's the step you want us to take. My point I'm making, that's correct. I don't want to not state that. But I do want to say that under Wiley the point was that there's a specific statute that declares public policy that made illegal firing illegal. Here we have a specific statute that makes failure to hire illegal. So let me just make sure I'm tracing your argument. What you're saying is, yeah, I get it, that there is not a public policy claim, common law claim for failure to hire. But when I look at what the New Jersey Supreme Court did to develop its public policy claim for wrongful termination, one of the things that they accounted for was the fact that there was an expressed statutory prohibition on this. And so when they made that common law for the first time in that case, it was instrumental to them that there was a statutory prohibition. And so if I'm teasing out your argument, correct me if I'm wrong, what you're saying is, aha, I've got the same input as the New Jersey Supreme Court had when it recognized the common law cause of action for violation of public policy, granted failure to wrongful termination. Here I've got the same input. I just want it in a different context. So if you really want to do what the New Jersey Supreme Court did, look at the inputs, and you should reach similar outcomes. Is that your argument? I hope I'm not walking into a trap, Your Honor. Yes. I'm just trying to trace it. No, no. I've seen it myself, too, if it's a trap. No, no, no. I think that's precisely. We're in the office of softballs right now. That's a trace. It's a trace question. But, Your Honor, I think that's exactly right. And that's why we think the New Jersey Supreme Court would, and this Court should either predict what the New Jersey Supreme Court would do or just ask specifically and directly to the New Jersey Supreme Court and get an answer. Okay. Thanks very much. We appreciate the argument this morning. We've got the matter under advisement.